David H. Boren, Esq. (SBN 186316)
        e-mail: *dboren@borenlawfirm.com*
LAW OFFICES OF DAVID H. BOREN
9595 Wilshire Blvd., Suite 900
Beverly Hills, CA  90212
Telephone:   (310) 492-4363
Facsimile:   (310) 492-4388

- and-

Jeff Sanders, Esq. (NY SBN  2696664)
        e-mail:  *jsanders@rlscf.com*
Ritholz Levy Sanders Chidekel & Fields LLP
235 Park Avenue South, 3rd Floor
New York, New York 10003
Telephone:   (212) 448-1800
Facsimile:   (212) 504-9553
(*Pro Hac Vice*)

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THRESHOLD MEDIA CORP. dba SPIN MOVE RECORDS, | ) ) Case No.:  CV-10-9318 DMG (AJWx) |
| | ) |
| Plaintiff, | ) **[DISCOVERY MATTER]** |
| | ) |
| | ) **DEFENDANTS' <u>EX PARTE</u>** |
| | ) **APPLICATION TO COMPEL** |
| | ) **DOCUMENT PRODUCTION AND** |
| **v.** | ) **WITNESS TESTIMONY** |
| | ) **REGARDING PLAINTIFF'S** |
| RELATIVITY MEDIA, LLC, | ) **ATTORNEY ENGAGEMENT** |
| RELATIVITY ROGUE, LLC | ) **AGREEMENT** |
| UNIVERSAL CITY STUDIOS | ) |
| PRODUCTIONS, LLLP, | ) |

| | |
|---|---|
| SUPERMARCHE, INC., HENRY JOOST, ARIEL SCHULMAN, HIT THE GROUND RUNNING ENTERPRISES, LLC, ANDREW JARECKI, and MARC SMERLING, | ) **Date:  Not Set**<br>) **Time:  Not Set**<br>) **Place:  Hon. Andrew J. Wistrich**<br>)<br>) |

Defendants.

_____

I, JEFF SANDERS, Esq., deposes and states as follows:

1.     I am a partner of Ritholz Levy Sanders Chidekel & Fields, LLP, counsel for Defendants in this case.  I submit this declaration in support of Defendants' emergency <u>Ex</u> <u>Parte</u> Application to compel testimony and document production concerning the economic terms of Plaintiff's attorney engagement agreement(s) (the "Fee Agreements").  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I would and could competently testify to these facts under oath.

2.     The deposition of Peter Barker, the chief executive of Plaintiff, is scheduled for Wednesday August 17, 2011.  Mr. Barker will be the fourth deponent examined since Monday August 15, 2011.  Based on Plaintiff's counsel's pattern of making baseless objections and delaying two of the last three depositions[1], during the lunch break in today's deposition session, at 2:34 p.m., I sent an email to Neville

---

[1]      On Monday August 15, 2011, Mr. Johnson objected to my relieving co-counsel David Boren, Esq., after I arrived to Amy Kuney's deposition, which Mr. Boren started while I was in transit from the airport to Mr. Boren's office. Mr. Johnson represented that local rules prohibited examination by more than one attorney.  When I asked Mr. Johnson to cite an applicable rule that supported his position, he feigned disgust, stood up and declared "this deposition is over." Moments later he left the room and said that he was calling Magistrate Judge Wistrich's chambers "to get a ruling." Several minutes later, Mr. Johnson relented and resumed participation in the examination.   Either Judge Wistrich's chambers did not return the call, or the call was never placed in the first place.  On Tuesday, after Mr. Boren spoke an objection, Mr. Johnson again objected, this time to more than one attorney speaking objections.  Again, he stormed out of the room, purportedly to call Judge Wistrich.  Several minutes later, he resumed participation, and the call to Judge Wistrich was not mentioned again.   In light of Mr. Neville's manufactured theatrics over non-controversial matters, we gauged – apparently correctly -- that Defendants' counsel would use discovery of its fee agreement as an opportunity to engineer another controversy.  We submit this application in an attempt to pre-empt an unnecessary conflict, or at least mitigate the inconvenience and expense.

Johnson and Nausheen Kazalbasch, (counsel for Plaintiff with primary responsibility for this case) advising that we intended to examine Mr. Barker about the economic terms of the Fee Agreements, requesting that any documents reflecting the Fee Agreements be produced in advance of Mr. Barker's deposition, and citing controlling Ninth Circuit authority. (The text of my August 16, 2011, 2:34pm email is attached hereto as Exhibit A).

3.    Shortly thereafter, I discussed the issue with Ms. Kazalbasch and Mr. Johnson. Ms. Kazalbasch responded that she believed that the subject of the Fee Agreements was subject to attorney- client privilege, but requested that we provide the authorities that support the position that the Fee Agreements are discoverable.

4.    At 4:45 p.m. today, I sent an email to Ms. Kazalbasch that transmitted seven cases that stand for the proposition that "[a]s a general rule client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege" *U.S. v. Butcher*, 72 F.3d 1418,1424 (9th Cir. 1995). The *Butcher* court further noted that this rule is subject to two exceptions: "where disclosure would compromise confidential communications between attorney and client or constitute the "last link" in an existing chain of evidence likely to lead to the client's indictment" *Id.* In this instance, Defendants seek only the terms on which Plaintiff is obligated to pay fees to its counsel. I have suggested that counsel redact any matters in the Fee Agreements that disclose legal theories, or discuss facts that are relevant to claims or defenses in this case, and that I would not examine the witness on the foregoing. Accordingly, as the information we seek is limited to the economic arrangement between attorney and client, it is not subject to privilege as it would not disclose information that is "inextricably intertwined with confidential communications." *Id.* at 1425 (quoting and distinguishing *Ralls v. United States,* 52 F.3d 223, 226 (9th Cir. 1995)). (Exhibit B hereto is a list of the seven cases sent to Defendants' counsel).

5.     At 9:50pm on August 16, 2011 Ms. Kazalbasch sent an email to Mr. Boren and me that stated:

> Counsel:
>
> We do not agree that the authorities you provided today support the disclosure of the Plaintiff's fee agreement and/or fee arrangement with our law firm in this action.
>
> Thanks.

6.     At 9:55 pm on August 16, 2011, I wrote back:

> Is there any contrary authority to which you can cite? If not, we will be filing an ex parte motion as soon as we can lodge it.

7.     Ms. Kazalbasch did not respond with any contrary authority, or any basis in law or fact that supported Plaintiff's refusal to provide discoverable evidence, or allow Plaintiff's key witness to testify to non-privileged matters.

8.     The Fee Agreements are highly relevant to this case.   It is virtually undisputed among Plaintiff and Defendants that, if Defendants were to prevail in this case, the recoverable damages would be *de minimis*.   This matter involves alleged copyright infringement of three works, as to two of which, Plaintiff was compelled to withdraw its claims for statutory damages and attorney's fees because it had not applied for copyright registration prior to the commencement of the alleged infringement.   The Defendants' motion picture has an unrecouped balance (i.e. gross revenues less expenses) of more than $8.5 million, and will not likely ever become profitable, this foreclosing Plaintiff's recovery of Defendants' profits.   *See* 17 U.S.C. 504(b).   Accordingly, Defendants can seek only actual damages – the value of a reasonable license fee -- for the two late registered works (17 U.S.C. 504(b)), and statutory damages for the remaining work.   *See* 17 U.S.C. 504(c).   As the highest fee ever received by Plaintiff for licensing the work at issue is $2,500 -- actual damages would appear limited to that fee; thus the *maximum* aggregate damages could not

exceed 35,000 -- $30,000 in maximum statutory damages for the properly registered work, and $5,000 in actual damages for the late registered work.

9.    In light of the limits to Plaintiff's plausible expectation of potential damages, Plaintiff has threatened that its leverage lies not in a damages award, but in its intended application for attorney's fees under 17 U.S.C. § 505.  Plaintiff's counsel's apparent theory is that should it prevail on liability, no matter how small the damage award, it will be entitled to recover fees equal to the time value of their work.[2]  As the fee application is clearly the tail wagging the dog, discovery of Plaintiff's fee arrangement is highly relevant, as the potential fee application is the greatest amount of value in dispute in this case.

10.    I have met and conferred with Ms. Kazalbasch and Mr. Johnson regarding this Ex Parte application throughout the afternoon and night of August 16 and advised them that we would be making this <u>ex parte</u> application.  Pursuant to Local Rule 7-19.1, the contact information for counsel for plaintiff is as follows:  Neville Johnson and Nausheen Kazalbasch, Johnson & Johnson LLP, 439 N. Canon Drive, Beverly Hills, California 90210 Telephone: (310) 975-1080 E-mail: njohnson@jjllplaw.com, nkazalbasch@jjllplaw.com.  Counsel for Plaintiffs have not indicated whether or not they will oppose this <u>ex parte</u> application (although based on the fact Plaintiff refuses to produce the retainer agreement and counsel for Plaintiff has indicated they will not allow Mr. Barker to answer questions based on such agreement, Defendants assume that Plaintiff will be opposing this <u>ex parte</u> application).

11.    Because Mr. Barker's deposition will begin at 9:00 a.m. on August 17, 2011, Defendants respectfully request that the Court endeavor to rule on this simple

---

[2]    Of course, Defendants dispute both liability, and Plaintiff's interpretation of 17 U.S.C. § 505.

request prior to the anticipated end of the August 17th deposition session at 1:00 p.m.[3] In the event that the Court does not rule today, it would be convenient for me to schedule a continued session with Mr. Barker on August 23, 2011 when I will be in Los Angeles in connection with an unrelated matter pending in the United States District Court for the Central District of California.

12.     As  '[t]he burden of proof is on the party seeking to establish that the privilege applies" (*Butcher*, 72 F.3d at 1423), and Plaintiff has not and cannot articulate any basis for the application of attorney-client privilege to the Fee Agreements, this Court should (i) order the production of appropriately redacted copies of the Fee Agreements; and (ii) compel Mr. Barker to respond to questions in his deposition that relate to the economic terms of the Fee Agreements.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 17th day of August, 2011 at Los Angeles, California.


            /s/ Jeff Sanders
            JEFF SANDERS

---

[3]         Counsel previously agreed to accommodate Mr. Barker's professional schedule and end this session at lunchtime.  If the Court rules in advance of 1:00 p.m., I anticipate completing and adjourning Mr. Barker's deposition on August 17, 2011.

1

## EXHIBIT A

2

3    **Request for Production of Engagement Agreement**

4    Jeff Sanders

5    Sent: Tuesday, August 16, 2011 5:34 PM

6    To:   'njohnson@jjllplaw.com'; 'nkazalbasch@jjllplaw.com'

7    Cc:   'dboren@borenlawfirm.com'; Justin Leitner; Paul Anderson

8

9    Neville + Nausheen,

10   We are requesting that you produce the engagement agreement(s) between Threshold and/or Peter Barker and
11   Johnson + Johnson.  Note also that we are planning to examine Mr. Barker about the economic terms of you
     fee arrangement.  We are fine if you redact information in the agreement that reflects privileged
12   communications.  Nonetheless, we anticipate that you may object to the production and line of questioning on
     privilege grounds, and accordingly direct you to authority that clearly establishes that attorney-client fee
13   agreements are not subject to attorney - client privilege.  We can discuss after lunch:

14   *Hoot Wing, LLC v. RSM McGladrey Financial Process Outsourcing*, LLC, 2009 U.S. Dist. LEXIS 103045
     (S.D. Cal. 2009)
15

16   Plaintiffs claim that attorney client privilege protects all their submitted documents from disclosure. In
     particular, Plaintiff contends the retainer agreement between accountants Mayer Hoffman McCann PC
17   ("Mayer") and Eagen O'Malley & Avenatti, LLP is protected under the attorney-client privilege. However, the
     Ninth Circuit has repeatedly held retainer agreements are not protected by the attorney-client privilege or work
18   product doctrine.

19   Best,

20   /js

21   _____

22   *Ralls v. United States*, 52 F.3d 223, 225 (1995);

23
     See also *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995);
24

25   *In re Michaelson*, 511 F.2d 882 (9th Cir. 1975.) Because the attorney-client privilege has not been
     applied to retainer agreements, Plaintiff's document 1 is not protected by that privilege.
26

27   *Bryant v. Mattel, Inc*. 573 F. Supp. 1254 (C.D. Cal. 2007)

28   Mattel's question regarding who is paying Bryant's legal fees, addressed by objection No. 42, is

likewise not objectionable. MGA and Bryant argue that state law applies; however, because the present consolidated actions involve both federal and state-law claims, the federal law of privilege applies.

*Agster v. Maricopa County*, 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privilege applies."). To that end, consistent with federal privilege law, fee-payment arrangements are relevant to credibility and bias, and if asked in discovery, Bryant must disclose who is paying his legal fees. See

*United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege.").

EXHIBIT B

*Hoot Wing, LLC v. RSM McGladrey Financial Process Outsourcing*, LLC, 2009 U.S. Dist. LEXIS 103045 (S.D. Cal. 2009)

*United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995)

*Ralls v. United States*, 52 F.3d 223, 225 (9th Cir.1995)

*Tornay v. United States*, 840 F.2d 1424 (9th Cir. 1988)

*Bryant v. Mattel, Inc*. 573 F. Supp. 1254 (C.D. Cal. 2007)

*Freelife Intl., Inc. v. Am.Educational Music Publns., Inc.*, 2010 US Dist. LEXIS 12609 (D. Ariz. 2010)

*Sunterra Corp. v. Perini Bldg. Co.*, 2009 U.S. Dist. LEXIS 20535 (E.D. Cal. 2009)

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I certify that I am a principal of the LAW OFFICES OF DAVID H. BOREN and that on the date shown below, I caused service of a true and correct copy of the attached:  **"DEFENDANTS' EX PARTE APPLICATION TO COMPEL DOCUMENT PRODUCTION AND WITNESS TESTIMONY REGARDING PLAINTIFF'S ATTORNEY ENGAGEMENT AGREEMENT"** to be completed by:

_____        personally delivering

_____        delivery via Nationwide Legal Services

_____        sending via Federal Express or other overnight delivery service

_____        depositing for mailing in the U.S. mail with sufficient postage affixed thereto to:

_____        delivery via facsimile machine to fax no.

\_\_X\_\_        electronic filing, and thereby delivery via e-mail to:


Neville L. Johnson, Esq.
        email:  njohnson@jjllplaw.com
Douglas L. Johnson, Esq.
        email:  djohnson@jjllplaw.com
Nausheen Kazalbasch, Esq.
        email:  nkazalbasch@jjllplaw.com
JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, CA  90210

Executed on August 17, 2011, at Beverly Hills, California.

\_X\_        (Federal)  I declare under penalty of perjury under the laws of the United States and the State of California that the above is true and correct.


_____\s\ David H. Boren_____
DAVID H. BOREN